UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

Dealer Specialties International, Inc.,

    Plaintiff/Judgment Creditor,

v.                                      Case No. 6:18-mc-58-ORL-41GJK

Car Data 24/7, Inc., et al.,

    Defendant/Judgment Debtor, and

CarData, Inc., John Finucane, Jaylee's Auto
Sales, Inc., and Dealer360, Inc.,

    Impleaded Third-Party Defendants.
_____/

**SUPPLEMENTAL COMPLAINT
AND DEMAND FOR JURY TRIAL**

Plaintiff/Judgment Creditor Dealer Specialties International, Inc. ("Dealer Specialties"), pursuant to Federal Rules of Civil Procedure 66 and 69(a), and Sections 56.29, Florida Statutes, brings this Supplemental Complaint in Proceedings Supplementary suing impleaded Third-Party Defendants, CarData, Inc., John Finucane, Jaylee's Auto Sales, Inc., and Dealer360, Inc. (collectively "Impleaded Defendants"), and alleges as follows:

**PARTIES, JURISDICTION, AND VENUE**

1. Dealer Specialties brings this action pursuant to Fla. Stat. § 56.29, its Motion to Commence Proceedings Supplementary and for Impleader (Doc. 11), and the Court's Order on Proceeding Supplementary and Impleader (Doc. 14).

2. On August 4, 2016, judgment was entered in the Southern District of Ohio in Case No. 1:16-cv-00499 in favor of Dealer Specialties and against Car Data 24/7 and Gary Lindsey, jointly and severally, in the amount of **$1,358,889.24** plus interest ("Judgment").

3. On September 20, 2016, Dealer Specialties registered this foreign judgment with the district court of the Middle District of Florida. (Doc. 1).

4. Dealer Specialties is the Judgment Creditor of Car Data 24/7, Inc.

5. This Court has ancillary jurisdiction over Dealer Specialties' fraudulent transfer claims against the Impleaded Defendants. *See National Maritime Services, Inc. v. Straub*, 776 F.3d 783, 787 (11th Cir. 2015) (federal court has ancillary jurisdiction over a broad range of proceedings supplementary against third parties "to assist in the protection and enforcement of federal judgments—including attachment, mandamus, garnishment, and the prejudgment avoidance of fraudulent conveyances.") (quoting *Peacock v. Thomas*, 516 U.S. 349, 354 (1996)).

6. The amount owed on the outstanding judgments is in excess of $75,000 exclusive of interest, costs, and attorneys' fees.

7. Dealer Specialties is a corporation registered in the State of Ohio with its principal place of business in Ohio.

8. The Impleaded Defendants are all citizens of the state of Florida for the purposes of diversity jurisdictions under 28 U.S.C. § 1332(c)(1).

    a. CarData, Inc. ("CarData") is a corporation registered in the State of Florida with its principal place of business in Broward County, Florida.

    b. John Finucane ("Finucane") is an individual who resides in and is a citizen of the State of Florida.

    c. Jaylee's Auto Sales, Inc. ("Jaylee's Auto Sales") is a corporation registered in the State of Florida with its principal place of business in Brevard County, Florida.

    d. Dealer360, Inc. ("Dealer360") is a corporation registered in the State of Florida with its principal place of business in Brevard County, Florida.

9. As all of the Impleaded Defendants are citizens of a different state (Florida) than the Judgment Creditor Dealer Specialties (Ohio), and the amount in controversy exceeds

$75,000, this Court has original jurisdiction under 28 U.S.C. § 1332 on Dealer Specialties' alter ego/mere continuation claim against CarData, Inc. for its direct liability on the Judgment.[1]

10. This Court has personal jurisdiction over the Impleaded Defendants who are all citizens of the State of Florida.

11. Venue is proper in the Middle District of Florida under Federal Rule of Civil Procedure 69 and Fla. Stat. Section 56.29.

12. Venue is proper within the Orlando Division of the Middle District of Florida because Defendant Jaylee's Auto Sales, Inc. has its principal place of business in Brevard County, which falls within the Middle District of Florida, Orlando Division.

**FACTS**

General Background on Car Data 24/7 and its Key Employees

13. Car Data 24/7, Inc. ("Car Data 24/7"), a franchisee of Dealer Specialties, was involved in the photography, data collection, data distribution, and vehicle inventory merchandising business for vehicles.

14. Under its April 17, 2011 franchise agreement with Dealer Specialties, Car Data 24/7 had a non-exclusive franchise territory encompassing Broward, Miami-Dade, Monroe, and Palm Beach Counties.

15. Car Data 24/7 was originally owned by Gary Lindsey, and it was originally operated by Gary Lindsey and his wife Sherry Lindsey.

16. Around 2005, Gary and Sherry Lindsey's son, Ell Jay Lindsey ("Lindsey"), began working in the business.

---

[1] A court has jurisdiction to hold a third party directly liable for a foreign judgment if the plaintiff "separately establishes the Court's original jurisdiction over such a claim." *See, e.g., SMS Fin. J, LLC v. Cast-Crete Corp.*, No. 8:18-nc-00008-CEH-JSS, 2018 WL 1726434 at *2 (M.D. Fla. Apr. 10, 2018).

17. In 2011, Gary Lindsey gifted the business to Lindsey, who became the sole owner and President of Car Data 24/7.

18. Lindsey worked at Car Data 24/7 with a team of individuals who were referred to as vendors and paid as independent contractors.

19. Through Lindsey and its vendors, Car Data 24/7 provided services under Dealer Specialties' vehicle inventory platform to car dealerships in South Florida. As of 2014, Car Data 24/7 serviced about 80 or more car dealerships.

20. Two of Car Data 24/7's vendors, John Finucane ("Finucane") and Raul Carabeo ("Carabeo"), assumed management roles within Car Data 24/7 in addition to their work as vendors.

21. Finucane was a good friend of Lindsey's from high school. Finucane started working at Car Data 24/7 in 2005, around the same time Lindsey did. Finucane worked at Car Data 24/7 from 2005 until February 2015, primarily in servicing car dealerships. Finucane acted as Car Data 24/7's operations manager.

22. Carabeo was a car salesman when he met Lindsey. Carabeo worked at Car Data 24/7 from 2013 until February 2015, primarily in sales or signing-up car dealerships to work with Car Data 24/7. Carabeo acted as Car Data 24/7's general sales manager.

23. By his access to the franchised business, Lindsey learned confidential information about Dealer Specialties' trade secrets and business model, received training during his attendance at several Dealer Specialties' franchisee conferences, and gained considerable contact with Dealer Specialties' clients and opportunities to develop industry relationships.

24. As members of Car Data 24/7's management team, Finucane and Carabeo also learned confidential information about Dealer Specialties' trade secrets and business model, received training during their attendance at one or more Dealer Specialties' franchisee

conferences, and gained considerable contact with Dealer Specialties' clients and opportunities to develop industry relationships.

Car Data 24/7's Preparations to Break With Dealer Specialties<br>(Feb. 2014 through Feb. 2015)

25. In the Summer of 2014, Lindsey formed Dealer360, an entity which he solely-owned. In August of 2014, Lindsey began to transfer money--at least 23 different transactions totaling more than $19,400--from Car Data 24/7 to Dealer360.

26. Dealer360 used that money to pay for the development of a mobile application for the photography, data collection, data distribution, and vehicle inventory merchandising of vehicles.

27. Around that same time, Lindsey also began transferring money from Car Data 24/7 to Jaylee's Auto Sales, Inc., an entity which Lindsey also solely-owned. Between July 9, 2014 and March 10, 2015, Lindsey initiated at least 15 transfers between the businesses totaling $12,446.14.

28. In the Fall of 2014, Car Data 24/7 began defaulting on its franchisee payment obligations to Dealer Specialties.

29. In November 2014, Lindsey approached HomeNet, Inc.—a competitor of Dealer Specialties—to discuss their vehicle inventory platform.

30. On November 26, 2014, Lindsey, as Car Data 24/7's President, entered into a Mutual Nondisclosure Agreement with HomeNet, Inc. ("HomeNet").

31. The following day, Lindsey, as Car Data 24/7's President, advised HomeNet that it was interested in entering into a Reseller Agreement.

32. The HomeNet Reseller Agreement was finalized on December 1, 2014.

33. Even though Car Data 24/7 was still a franchisee of Dealer Specialties, in Section 7.1 of the HomeNet Reseller Agreement, Car Data 24/7 represented and warranted that "it is not a party to any agreement with a third party, the performance of which is reasonably likely to affect adversely its ability of the ability of the other Party hereto to perform fully its obligations hereunder."

34. That same day, Lindsey and Finucane arranged to travel to Scottsdale Arizona to meet in person with HomeNet. Airfare, hotel, and food expenses of $2,630.68 were paid out of Car Data 24/7's bank accounts.

35. Between December 2014 and February 2015, Lindsey and Finucane started shifting the more than 80 car dealerships Car Data 24/7 serviced away from Dealer Specialties' vehicle inventory platform to HomeNet's vehicle inventory platform.

36. On February 3, 2015, Dealer Specialties issued a formal notice of default to Car Data 24/7 for its non-payment of fees due and owing under the franchise agreement.

Car Data 24/7's Transition to CarData
(February 2015)

37. On Monday, February 9, 2015, Lindsey advised one car dealership client that Car Data 24/7 will no longer represent Dealer Specialties and will instead represent HomeNet. Lindsey represented that this shift "doesn't affect your billing or the lot services we (Car Data 24/7, Inc.) provide you." About a month later, Lindsey told this same dealership that the relationship with Dealer Specialties ended "as of November 2014."

38. On Friday, February 13, 2015, a different car dealership, told Dealer Specialties that it intended to cancel its service and switch to HomeNet "based on their relationship with Ell Jay Lindsey." That same day, Dealer Specialties sent Car Data 24/7 a second notice of default

warning that Car Data 24/7, Lindsey, and others violated their respective restrictive covenants and non-compete agreements.

39. That Monday, February 16, 2015, Lindsey registered a new business entity with the State of Florida. The new entity was called "Car Data, Inc." (with a space between "Car" and "Data").

40. On February 17, 2015, Lindsey filed a notice of dissolution of "Car Data, Inc." claiming that the company was created in error on SunBiz.

41. That same day, Lindsey's friend Finucane registered a new business entity with the State of Florida. That entity is Defendant CarData (with no space between Car and Data).

42. The following day, an affidavit Lindsey executed was filed on sunbiz.org with Finucane's entity, CarData. In his affidavit, Lindsey attested that "Car Data, Inc." was voluntarily dissolved on February 17, 2015 and that Lindsey will not use the name "Car Data, Inc." for any reason in the future.

43. Around this same time, HomeNet advised Car Data 24/7, Inc. that it became aware that Car Data 24/7, Inc. had an existing contract with Dealer Specialties. Lindsey had previously represented to HomeNet that no such agreement existed.

44. HomeNet terminated its contract with Car Data 24/7 effective February 23, 2015.

45. Dealer Specialties terminated its franchise agreement with Car Data 24/7 effective February 27, 2015.

46. Dealer Specialties contacted more than 80 car dealerships that Car Data 24/7 had serviced pursuant to its franchise agreement with Dealer Specialties. Despite Dealer Specialties' efforts to recover these customers, 79 car dealerships stayed with Lindsey, Finucane and their newly formed business, CarData.

47. Dealer Specialties' filed its complaint against Car Data 24/7 in the Southern District of Ohio on March 11, 2015 (in Case No.1:15-cv-170). Car Data 24/7's claims proceeded to arbitration. On August 4, 2016, the arbiter's award was confirmed in case 1:16-cv-499 and the Judgment, at issue in this case, was entered against Car Data 24/7 (jointly and severally) in the amount of $1,358,889.24 plus interest. (Doc. 1).

CarData as Alter Ego/Mere Continuation of Car Data 24/7

48. CarData was organized to continue the operations of Car Data 24/7.

49. Both entities used fictitious names that were substantially the same, CarData versus Car Data 24/7.

50. Car Data 24/7's logo (on the left below) is substantially the same as CarData's logo (on the right below).

 

51. CarData and Car Data 24/7 operated the exact same type of business, a photography, data collection, data distribution, and vehicle inventory merchandising business for vehicles.

52. Lindsey, Finucane, and Carabeo maintained their key roles in CarData.

53. To operate CarData, Lindsey, Finucane, and Carabeo used the confidential information they learned about Dealer Specialties' trade secrets and business model as well as the considerable contacts they gained with Dealer Specialties' clients and the numerous industry relationships they developed by working with Dealer Specialties.

54. CarData continued providing the same services to 79 of the 84 car dealerships that Car Data 24/7 previously serviced.

55. Most, if not all, of Car Data 24/7's service representatives/vendors continued to perform the same services on behalf of CarData.

56. CarData maintained the same physical address, the same P.O. Box, and the same contact information as Car Data 24/7.

57. Other than the company's name and email addresses, nothing else changed.

58. CarData and Car Data 24/7 acted and operated as a single business entity.

59. Car Data 24/7 transferred its name, customers, goodwill, business model, income, profits, and other assets as well as its officers, employees and contractors to CarData.

60. CarData procured Car Data 24/7's clients for its own benefit.

61. CarData profited from Car Data 24/7's former business.

62. Car Data 24/7's income, profits, and assets were fraudulently transferred to CarData.

63. CarData attempted to conceal the transfer of Car Data 24/7's income, profits, and assets to prevent existing creditors from collecting from Car Data 24/7.

64. CarData is a mere continuation and/or alter ego of Car Data 24/7.

65. CarData's corporate form is being used fraudulently and for an improper purpose.

<u>Additional Actions Related to Fraudulent Transfers From Car Data 24/7</u>

66. In March of 2015, Car Data 24/7 paid the payroll expenses of CarData for more than 10 different individuals, in the total amount of $20,824.38.

67. Within one year before March 16, 2015 (the date Car Data 24/7 was served with process in the original action), Car Data 24/7's property and assets were transferred to CarData, with the intent to delay, hinder or defraud Car Data 24/7's creditors.

68. Finucane, as an owner of CarData, personally profited from Car Data's 24/7 former business.

69. Finucane attempted to conceal the transfer of Car Data 24/7's income, profits, and assets to prevent existing creditors from collecting from Car Data 24/7.

70. Between March 12, 2015 and June 5, 2018, CarData initiated approximately 75 wire transfers totaling more than $175,000 to the bank account of Jaylee's Auto Sales (an entity Lindsey solely-owns).

71. Jaylee's Auto Sales attempted to conceal the transfer of Car Data 24/7's income, profits, and assets to prevent existing creditors from collecting from Car Data 24/7.

72. Within one year before March 16, 2015, Car Data 24/7's property and assets were transferred to Finucane with the intent to delay, hinder or defraud Car Data 24/7's creditors.

73. Within one year before March 16, 2015, Car Data 24/7's property and assets were transferred to Jaylee's Auto Sales with the intent to delay, hinder or defraud Car Data 24/7's creditors.

74. Within one year before March 16, 2015, Car Data 24/7's property and assets were transferred to Dealer360 with the intent to delay, hinder or defraud Car Data 24/7's creditors.

75. Because of these fraudulent transfers and the fraudulent and improper use of the corporate form, Car Data 24/7 has been rendered judgment proof. As a result, Judgment Creditor Dealer Specialties has been prevented from collecting on its judgment.

## COUNT I
### SUCCESSOR LIABILITY AS ALTER EGO OR MERE CONTINUATION
(*Against CarData*)

76. Dealer Specialties realleges paragraphs 1 through 60 as though fully set forth herein.

77. CarData was organized to continue the operations of Car Data 24/7.

78. Both entities used fictitious names that were substantially the same, CarData versus Car Data 24/7.

79. Both entities used substantially the same logos.

80. CarData and Car Data 24/7 operated the exact same type of business, a photography, data collection, data distribution, and vehicle inventory merchandising business for vehicles.

81. The same individuals who control CarData also controlled Car Data 24/7.

82. Lindsey, Finucane, and Carabeo maintained their key roles in CarData.

83. To operate CarData, Lindsey, Finucane, and Carabeo used the confidential information they learned about Dealer Specialties' trade secrets and business model as well as the considerable contacts they gained with Dealer Specialties' clients and the numerous industry relationships they developed by working with Dealer Specialties.

84. CarData continued providing the same services to 79 of the 84 car dealerships previously serviced by Car Data 24/7.

85. Most, if not all, of Car Data 24/7's service representatives/vendors continued to perform the same services on behalf of CarData.

86. CarData maintained the same physical address, the same P.O. Box, and the same contact information as Car Data 24/7.

87. Other than the company's name and everyone's email addresses, nothing else changed.

88. CarData and Car Data 24/7 acted and operated as a single business entity.

89. Car Data 24/7 transferred its name, customers, goodwill, business model, income, profits, and other assets as well as its officers, employees and contractors to CarData.

90. CarData is the alto ego or mere continuation of Car Data 24/7.

91. CarData was formed to receive all of Car Data 24/7's assets and business, before the anticipated liability of Car Data 24/7 was realized, in an attempt to hinder, delay, and/or evade the potential creditor from the underlying litigation, Dealer Specialties.

92. The corporate form was used fraudulently and/or for an improper purpose.

93. There is no separate corporate existence between the entities CarData and Car Data 24/7.

94. The fraudulent and/or improper use of the corporate structure caused Dealer Specialties' injury as it prevented Dealer Specialties' from collecting on its Judgment against Car Data 24/7, as Car Data 24/7 is now judgment proof.

95. Piercing the corporate veil will prevent an injustice to Dealer Specialties as it will enable Dealer Specialties to collect on the outstanding Judgment that it would have collected against Car Data 24/7, but for the improper use of the corporate form of CarData.

96. As a result of the foregoing, Dealer Specialties is entitled to pierce the corporate veil of CarData and impose liability upon CarData for its Judgment against CarData 24/7, as well as attorneys' fees and costs incurred by Dealer Specialties in these supplementary proceedings.

WHEREFORE, Dealer Specialties International, Inc. respectfully requests the Court find that Defendant CarData, Inc. is the alter ego and/or mere continuation of Car Data 24/7, Inc.; to find that as Car Data 24/7, Inc.'s alter ego and/or mere continuation CarData, Inc. is liable for the Judgment entered in the underlying case against Car Data 24/7, Inc., and to enter judgment in favor of Dealer Specialties International, Inc. and against CarData, Inc. for **$1,358,889.24,** the full amount of the Judgment against Car Data 24/7, Inc., plus interest, and attorneys' fees; and to grant any and all such other and further relief as is just and equitable.

COUNT II
FRAUDULENT TRANSFER UNDER § 56.29(3)(a) & (b)
(*Against CarData*)

97. Dealer Specialties realleges paragraphs 1 through 60 as if fully set herein.

98. Before March 16, 2015, Dealer Specialties was a future creditor of Car Data 24/7.

99. Within one year before and after March 16, 2015 (the date Car Data 24/7 was served with process in the Lawsuit), Car Data 24/7 had cash, personal property, customer accounts, accounts receivable, income, profits, financial accounts, goodwill and other interests which it gave to CarData.

100. The transfers of this cash, personal property, customer accounts, accounts receivable, income, profits, financial accounts, goodwill and other interests were made to delay, hinder or defraud Car Data 24/7's creditors, including Dealer Specialties.

101. Dealer Specialties was injured by these improper transfers of property and assets to CarData.

102. Dealer Specialties is entitled to relief under Fla. Stat. Section 56.29.

WHEREFORE, Dealer Specialties International, Inc. respectfully requests the Court to enter judgment against Car Data, Inc. pursuant to Section 56.29(3)(a) and (b), Florida Statutes, avoiding and recovering all such transfers, awarding judgment to Dealer Specialties International, Inc. for the value of all such transfers, and granting any and all such other and further relief as is just and equitable.

COUNT III
FRAUDULENT TRANSFER UNDER § 56.29(3)(a) & (b)
(*Against John Finucane*)

103. Dealer Specialties realleges paragraphs 1 through 60 as if fully set herein.

104. Before March 16, 2015, Dealer Specialties was a future creditor of Car Data 24/7.

105. Within one year before and after March 16, 2015 (the date Car Data 24/7 was served with process in the Lawsuit), Car Data 24/7 had cash, personal property, customer accounts, accounts receivable, income, profits, financial accounts, goodwill and other interests which it gave to Jon Finucane.

106. The transfers of this cash, personal property, customer accounts, accounts receivable, income, profits, financial accounts, goodwill and other interests were made to delay, hinder or defraud Car Data 24/7's creditors, including Dealer Specialties.

107. Dealer Specialties was injured by these improper transfers of property and assets to John Finucane.

108. Dealer Specialties is entitled to relief under Fla. Stat. Section 56.29.

WHEREFORE, Dealer Specialties International, Inc. respectfully requests the Court to enter judgment against John Finucane pursuant to Section 56.29(3)(a) and (b), Florida Statutes, avoiding and recovering all such transfers, awarding judgment to Dealer Specialties International, Inc. for the value of all such transfers, and granting any and all such other and further relief as is just and equitable.

COUNT IV
FRAUDULENT TRANSFER UNDER § 56.29(3)(a) & (b)
(*Against Jaylee's Auto Sales*)

109. Dealer Specialties realleges paragraphs 1 through 60 as if fully set herein.

110. Before March 16, 2015, Dealer Specialties was a future creditor of Car Data 24/7.

111. Within one year before and after March 16, 2015 (the date Car Data 24/7 was served with process in the Lawsuit), Car Data 24/7 had cash of which it gave at least $12,446 to Jaylee's Auto Sales.

112. This transfer of cash was made to delay, hinder or defraud Car Data 24/7's creditors, including Dealer Specialties.

113. Dealer Specialties was injured by this improper transfer of cash to Jaylee's Auto Sales.

114. Dealer Specialties is entitled to relief under Fla. Stat. Section 56.29.

WHEREFORE, Dealer Specialties International, Inc. respectfully requests the Court to enter judgment against Jaylee's Auto Sales pursuant to Section 56.29(3)(a) and (b), Florida Statutes, avoiding and recovering all such transfers, awarding judgment to Dealer Specialties International, Inc. for the value of all such transfers, and granting any and all such other and further relief as is just and equitable.

<u>COUNT V</u>
FRAUDULENT TRANSFER UNDER § 56.29(3)(a) & (b)
(*Against Dealer360*)

115. Dealer Specialties realleges paragraphs 1 through 60 as if fully set herein.

116. Before March 16, 2015, Dealer Specialties was a future creditor of Car Data 24/7.

117. Within one year before and after March 16, 2015 (the date Car Data 24/7 was served with process in the Lawsuit), Car Data 24/7 had cash of which it gave at least $19,400 to Dealer360.

118. This transfer of cash was made to delay, hinder or defraud Car Data 24/7's creditors, including Dealer Specialties.

119. Dealer Specialties was injured by this improper transfer of cash to Dealer360.

120. Dealer Specialties is entitled to relief under Fla. Stat. Section 56.29.

WHEREFORE, Dealer Specialties International, Inc. respectfully requests the Court to enter judgment against Dealer360 pursuant to Section 56.29(3)(a) and (b), Florida Statutes, avoiding and recovering all such transfers, awarding judgment to Dealer Specialties International, Inc. for the value of all such transfers, and granting any and all such other relief as is just and equitable.

COUNT VI
FRAUDULENT TRANSFER UNDER § 726.105
(*Against CarData*)

121. Dealer Specialties realleges paragraphs 1 through 60 as if fully set herein.

122. Before March 16, 2015, Dealer Specialties was a future creditor of Car Data 24/7.

123. As of March 16, 2015, Dealer Specialties was a present creditor of Car Data 24/7.

124. Both before and after March 16, 2015, Car Data 24/7 made improper and illegal payments to CarData without receiving a reasonably equivalent value in exchange.

125. These payments could have been applicable to the payment of the debt due to Car Data 24/7's creditor Dealer Specialties.

126. Car Data 24/7 made these payments with the intent to made to delay, hinder or defraud Car Data 24/7's creditor Dealer Specialties.

127. Dealer Specialties was injured by these fraudulent transfers of property and assets to CarData.

128. Dealer Specialties is entitled to relief under Fla. Stat. Section 726.105.

WHEREFORE, Dealer Specialties International, Inc. respectfully requests the Court to enter judgment against Car Data, Inc. pursuant to Section 726.105, Florida Statutes, avoiding and recovering all such transfers, awarding judgment to Dealer Specialties International, Inc. for the value of all such transfers, and granting any and all such other relief as is just and equitable.

COUNT VII
FRAUDULENT TRANSFER UNDER § 726.105
(*Against John Finucane*)

129. Dealer Specialties realleges paragraphs 1 through 60 as if fully set herein.

130. Before March 16, 2015, Dealer Specialties was a future creditor of Car Data 24/7.

131. As of March 16, 2015, Dealer Specialties was a present creditor of Car Data 24/7.

132. Both before and after March 16, 2015, Car Data 24/7 made improper and illegal payments to John Finucane without receiving a reasonably equivalent value in exchange.

133. These payments could have been applicable to the payment of the debt due to Car Data 24/7's creditor Dealer Specialties.

134. Car Data 24/7 made these payments with the intent to made to delay, hinder or defraud Car Data 24/7's creditor Dealer Specialties.

135. Dealer Specialties was injured by these fraudulent transfers of property and assets to John Finucane.

136. Dealer Specialties is entitled to relief under Fla. Stat. Section 726.105.

WHEREFORE, Dealer Specialties International, Inc. respectfully requests the Court to enter judgment against John Finucane pursuant to Section 726.105, Florida Statutes, avoiding and recovering all such transfers, awarding judgment to Dealer Specialties International, Inc. for the value of all such transfers, and granting any and all such other relief as is just and equitable.

COUNT VIII
FRAUDULENT TRANSFER UNDER § 726.105
(*Against Jaylee's Auto Sales*)

137. Dealer Specialties realleges paragraphs 1 through 60 as if fully set herein.

138. Before March 16, 2015, Dealer Specialties was a future creditor of Car Data 24/7.

139. As of March 16, 2015, Dealer Specialties was a present creditor of Car Data 24/7.

140. Both before and after March 16, 2015, Car Data 24/7 made improper and illegal payments to Jaylee's Auto Sales without receiving a reasonably equivalent value in exchange.

141. These payments could have been applicable to the payment of the debt due to Car Data 24/7's creditor Dealer Specialties.

142. Car Data 24/7 made these payments with the intent to made to delay, hinder or defraud Car Data 24/7's creditor Dealer Specialties.

143. Dealer Specialties was injured by these fraudulent transfers of property and assets to Jaylee's Auto Sales.

144. Dealer Specialties is entitled to relief under Fla. Stat. Section 726.105.

WHEREFORE, Dealer Specialties International, Inc. respectfully requests the Court to enter judgment against Jaylee's Auto Sales, Inc. pursuant to Section 726.105, Florida Statutes, avoiding and recovering all such transfers, awarding judgment to Dealer Specialties International, Inc. for the value of all such transfers, and granting any and all such other and further relief as is just and equitable.

<u>COUNT IX</u>
FRAUDULENT TRANSFER UNDER § 726.105
(*Against Dealer360*)

145. Dealer Specialties realleges paragraphs 1 through 60 as if fully set herein.

146. Before March 16, 2015, Dealer Specialties was a future creditor of Car Data 24/7.

147. As of March 16, 2015, Dealer Specialties was a present creditor of Car Data 24/7.

148. Both before and after March 16, 2015, Car Data 24/7 made improper and illegal payments to Dealer360 without receiving a reasonably equivalent value in exchange.

149. These payments could have been applicable to the payment of the debt due to Car Data 24/7's creditor Dealer Specialties.

150. Car Data 24/7 made these payments with the intent to made to delay, hinder or defraud Car Data 24/7's creditor Dealer Specialties.

151. Dealer Specialties was injured by these fraudulent transfers of property and assets to Dealer360.

152. Dealer Specialties is entitled to relief under Fla. Stat. Section 726.105.

WHEREFORE, Dealer Specialties International, Inc. respectfully requests the Court to enter judgment against Dealer360, Inc. pursuant to Section 726.105, Florida Statutes, avoiding

and recovering all such transfers, awarding judgment to Dealer Specialties International, Inc. for the value of all such transfers, and granting any and all such other and further relief as is just and equitable.

## DEMAND FOR JURY TRIAL

Judgment Creditor, Dealer Specialties International, Inc., demands a trial by jury on all issues so triable.

Dated:  August 26, 2019            Respectfully submitted,

CLARKE SILVERGLATE, P.A.
*Attorneys for Dealer Specialties*
799 Brickell Plaza, Suite 900
Miami, Florida  33131
Telephone: 305/377-0700
Facsimile: 305/377-3001

By: /s/ *Shannon P. McKenna*
    Spencer H. Silverglate
    ssilverglate@cspalaw.com
    Florida Bar No. 769223
    Shannon P. McKenna
    Florida Bar No. 385158
    smckenna@cspalaw.com